

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00320-CR

_____

MIKE ZAFF, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F18-2408-431

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Appellant Mike Zaff challenges his conviction for continuous family violence. *See* Tex. Penal Code Ann. § 25.11. In a single (but multipart) appellate issue, Zaff complains that the trial court erred by allowing the investigating detective to testify as an expert and by denying Zaff's related motion for continuance. Because the challenged portions of the detective's testimony were admissible as lay testimony, we will affirm.

## I. Background

Zaff dated the complainant, Sonoko Jin, for approximately seven months, with their relationship ending in March 2018.

### A. Abuse

Sonoko testified at trial. She described how Zaff "tried to control [her] life" by limiting her hobbies, prohibiting her from spending time with male friends, and asking her to sign a contract agreeing to his limitations. And she recalled that, after she had been dating Zaff for a few months, Zaff exploded in an angry curse-filled rage, and the relationship changed.

Sonoko told the jury that Zaff progressed to physical abuse in January 2018 when he "slapp[ed her] face." She described three other incidents of physical violence that occurred in the weeks that followed: first Zaff punched her hand and "lifted [her]

up and slammed [her] . . . to the floor," then later he "punched and grabbed . . . [her] arms" leaving a bruise, and still later he "grabbed [her] breast."[1]

In addition to Sonoko's testimony, the jury saw photographs of her bruises, watched portions of her two police interviews, listened to her recorded conversations with Zaff, reviewed numerous text-message conversations involving Zaff, and read a copy of the contract that Zaff had asked Sonoko to sign. It also heard testimony from Sonoko's friend and from several law-enforcement officials involved in the case. The key evidence at issue in this appeal, though, is the testimony from the detective assigned to the case, Detective Jeremy Chevallier.

## B.     Challenged Testimony

Before Detective Chevallier took the stand, Zaff argued (outside the jury's presence) that the detective could not testify as an expert because he had not been timely designated as one. *See* Tex. Code Crim. Proc. Ann. art. 39.14(b). The trial court found otherwise and overruled Zaff's objection. For much the same reason, when Zaff handwrote an unsworn motion for continuance based on his alleged surprise that Detective Chevallier would be testifying as an expert, the trial court reiterated its finding that the detective's expert designation was not a surprise, and it denied Zaff's motion.

---

[1]Explaining why she had continued dating Zaff, Sonoko testified that he had threatened to publicize sexual videos of her and "[t]o bring [her] down" if she left. Ultimately, she decided to go to the police because she became concerned that Zaff would harm her cats.

Regardless, the State claimed that it was not planning to call Detective Chevallier as an expert witness anyway. Zaff questioned whether the detective's testimony would cross into the expert realm, though, so the trial court held a hearing to explore the anticipated testimony, determine if it required Detective Chevallier to qualify as an expert, and vet his qualifications. At that hearing's conclusion, the State maintained that the detective's testimony was within the scope of a lay witness's testimony, but it argued that if expert qualifications were necessary, Detective Chevallier was sufficiently qualified. Zaff, meanwhile, argued that the detective was not qualified to talk "about any sort of behavioral characteristics" or about what was "[c]ommon in [his] experience for family[-]violence victims." The trial court ruled that, to the extent that expert qualifications were necessary, Detective Chevallier had "been proved up" and could testify regarding "behaviors of certain types of family[-]violence victims" and "compare those to the victim."

With these matters resolved, Detective Chevallier finally took the witness stand in front of the jury. He testified that he had worked as a police officer for 31 years, had interacted with family-violence victims "[m]any times," had handled family-violence cases "daily" while working on patrol, and had investigated three to four family-violence cases each week in the several years that he had been working as a detective. Detective Chevallier then described how his investigation into Zaff's abuse progressed and what led him to seek a warrant for Zaff's arrest. But when the detective was asked whether Sonoko's oral and written statements to him had been

4

consistent with her prior statement to the intake officer, Zaff objected that such testimony was "getting into the realm of talking about truthfulness."[2] The trial court overruled the objection, distinguishing between the detective's discussing "corroborating evidence" and his directly commenting on "whether or not she [wa]s credible or truthful." Zaff disagreed with this distinction, and the trial court granted him a running objection on that basis.

Detective Chevallier thus proceeded to testify that, when he interviewed Sonoko, her description of events appeared to be consistent with her prior statements and with other pieces of evidence that he had gathered. He also verified that certain aspects of the case—such as the delay in Sonoko's reporting of abuse and the lack of video evidence—were common in family-violence cases.

## C.    Verdict

The jury found Zaff guilty of continuous family violence, and after hearing additional punishment evidence, it assessed his punishment at confinement for seven years and a fine of $10,000. *See* Tex. Penal Code Ann. § 25.11.

---

[2]During the previously discussed hearing on Detective Chevallier's testimony, Zaff argued that the detective could not testify that he "believe[d Sonoko's] story to be credible." The trial court agreed in part, cautioning that Detective Chevallier could not directly comment on the credibility of another witness.

## II. Discussion

In a single appellate issue, Zaff contends that the trial court erred by allowing Detective Chevallier to testify as an expert and by denying Zaff's related motion for continuance.

### A.    Admission of Testimony

Zaff lists 13 specific excerpts of Detective Chevallier's testimony that, according to him, crossed into the expert realm and should have been excluded due to the detective's untimely designation and lack of expert qualifications. But none of the challenged testimony required Detective Chevallier to be qualified as an expert; it was admissible as lay testimony.[3]

#### 1.    Standard of Review

We review the trial court's decision to admit a witness's testimony for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Smith v. State*, Nos. 02-21-00201-CR, 02-21-00202-CR, 2022 WL 2979182, at *3 (Tex. App.—Fort Worth July 28, 2022, no pet.) (mem. op., not designated for publication). Generally, the trial court may admit a witness's statements as either lay testimony or expert testimony. *See* Tex. R. Evid. 602, 701–02.

A lay witness may testify to matters within his personal knowledge and to opinions or inferences that are "rationally based on the witness's perception" and

---

[3]Zaff concedes that Detective Chevallier was timely designated as a lay witness.

"helpful to clearly understanding the witness['s] testimony or to determining a fact in issue." Tex. R. Evid. 602, 701; *see Rhomer*, 569 S.W.3d at 669. An expert, on the other hand, must be "qualified . . . by knowledge, skill, experience, training, or education" and can testify to matters on which "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702; *see Rhomer*, 569 S.W.3d at 669.

Because "all perceptions are evaluated based on experiences," *Hawkins v. State*, No. 06-08-00087-CR, 2009 WL 30255, at *4 (Tex. App.—Texarkana Jan. 7, 2009, pet. ref'd) (mem. op., not designated for publication), "[t]here is no distinct line between lay opinion and expert opinion," *Rhomer*, 569 S.W.3d at 669, and courts are often called upon to determine where a given portion of testimony falls on this spectrum. *See, e.g.*, *Smith*, 2022 WL 2979182, at *4–5 (collecting cases affirming admission of lay officer testimony regarding, e.g., whether two stab wounds reflect the same type of knife, whether the victim exhibited indicators of strangulation, whether the victim's wounds were defensive, whether the defendant's hands showed symptoms of methamphetamine exposure, whether bruises appeared new or old, and what appeared to have caused the victim's injuries).

### 2. Lay Testimony

The challenged portions of Detective Chevallier's testimony fit into two categories: (1) testimony regarding whether the evidence was consistent with or contradicted Sonoko's statements, which Zaff refers to as "consistent with/

7

corroborate testimony"; and (2) testimony regarding, again in Zaff's words, "the manner in which family[-]violence victims behave."[4]

### 1. Testimony Regarding Corroboration

The first batch of challenged testimony—Detective Chevallier's "consistent with/ corroborate testimony"—did not require any specialized training.

Detective Chevallier confirmed that Sonoko's description of events was consistent with her prior statements to police, with the intake officer's report, with other witnesses' statements, with the photographic evidence the detective reviewed, with the wounds he observed, and with Sonoko's cell-phone data.[5] But Detective Chevallier's confirmation of these consistencies amounted to rudimentary

---

[4]Zaff's appellate argument lumps together two objections: his objection to Detective Chevallier's testifying as an expert and his objection to the detective's commenting on another witness's credibility and thus invading the province of the jury. But these two objections reflect distinct limitations on witness testimony—one requires expert qualifications, and the other bars a topic entirely regardless of qualifications. Even Zaff struggles to merge the two concepts; he argues that he was entitled to rebut Detective Chevallier's testimony with an expert of his own while simultaneously arguing that the challenged excerpts of testimony commented on Sonoko's truthfulness and that no witness should be permitted to comment on another's truthfulness. To the extent that Zaff intends to raise a separate appellate issue challenging Detective Chevallier's testimony as invading the province of the jury, he has failed to brief that issue. *See* Tex. R. App. P. 38.1(i).

[5]Zaff's list of challenged excerpts includes Detective Chevallier's general statement that he looked for corroborating evidence when investigating crimes. This statement is unlike the other testimony that Zaff complains of, as it does not compare any two pieces of evidence or address whether the detective found corroborating evidence in this case. Zaff has not separately addressed this statement or explained why he believes it required specialized knowledge or expertise.

observations based on his firsthand perceptions of the specific pieces of evidence mentioned. Observing, for example, that one witness's statement is consistent with another witness's statement, or that a person who claims to have sustained a bruise in a given area exhibits a bruise in that area, generally does not require any specialized training.[6] *See id.* (holding that officer could testify as lay witness that photograph was consistent with complainant's description of events). Indeed, when Sonoko's friend testified as a lay witness, she too confirmed that the injuries she had observed on Sonoko were "in line with what [Sonoko] had told [her]." This observation required no expert training, and Zaff—presumably realizing as much—did not object to it. Zaff has not explained why Detective Chevallier's confirmation of similar observed consistencies should have been treated differently and required expertise.

So, even if we assume that Detective Chevallier was neither timely designated nor qualified to testify as an expert witness, his "consistent with/ corroborate" statements were admissible as lay testimony. *See* Tex. R. Evid. 701. We overrule this portion of Zaff's appellate issue.

---

[6]Zaff's counsel questioned Detective Chevallier regarding consistencies in the evidence as well. He asked the detective to confirm, for example, that "[i]f someone says, I had a bruise on this date, and there is evidence that they did not have a bruise on that date . . . that's inconsistent" and that "[i]t would be consistent with what [Zaff] told [him] if Sonoko admitted . . . [that Zaff had] tried to break up with [her] multiple times."

## 2.   Testimony Regarding Family-Violence Characteristics

The second batch of testimony that Zaff challenges—Detective Chevallier's testimony regarding "the manner in which family[-]violence victims behave"[7]—was also admissible as lay testimony.

Of the 13 testimonial excerpts that Zaff challenges on appeal, just three addressed the behavior of family-violence victims. In each of those three, Detective Chevallier gave brief, often one-word answers to indicate whether, in his personal experience with family-violence cases, a given scenario was common or uncommon. A prime example:

> Q [State]. You said you've had extensive interactions with family[-]violence victims. Do they always call up the police as soon as an assault happens and make a report?
>
> A [Detective Chevallier]. No, they don't.
>
> Q. Did it surprise you that Sonoko waited to come to police and make a report about what had been happening?
>
> A. No.
>
> Q. Why not?
>
> A. It's just not uncommon. It's just not uncommon in my experience.

---

[7]Among Zaff's challenged excerpts is a portion of testimony in which Detective Chevallier discussed the characteristics of family-violence abusers, as opposed to family-violence victims. The substance of Zaff's brief does not mention such testimony; rather, he focuses on the detective's testimony "regarding the behavior of family[-]violence victims" and "the manner in which family[-]violence victims behave."

[Indentation altered.] The other two challenged excerpts were similar. In them, Detective Chevallier confirmed that, "[y]es," it was common for there not to be visible injuries in family-violence cases; that "[n]o," the lack of visible injuries did not necessarily reflect that no assault had occurred; that family violence "normally [occurred] in a private setting"; and that "[y]es, it is" unusual to have video evidence in such cases. The detective did not explain the psychology of family-violence victims or the dynamics of the abuser–victim relationship. *Cf. Nwaiwu v. State*, No. 02-17-00053-CR, 2018 WL 3763899, at *3 (Tex. App.—Fort Worth Aug. 9, 2018, pet. ref'd) (mem. op., not designated for publication) (noting that "the average juror will not typically be familiar with . . . the dynamics of the relationship between abuser and victim," so "expert testimony has generally been held to be admissible to explain recantations, delays in reporting, lies to the police, and why a complainant would continue living with a[n abuser]"). Nor did he claim that his observations were based on a scientific theory. *See Smith*, 2022 WL 2979182, at *5. Rather, his testimony was akin to that in *Smith. See id.* at *2–5.

There, we held that an officer did not need to qualify as an expert to testify that, based on his experience and perception, the bruises on the complainant's arm appeared to have been caused by fingers, these bruises "matched up" with the complainant's claims of domestic abuse, and such bruises were "[n]ot unusual or uncommon" in family-violence investigations. *Id.* at *2–3. We explained that "observations [that] do not require significant expertise to interpret and [that] are not

based on a scientific theory can be admitted as lay opinions"—even if "the witness has experience or training," and even if the witness's experience enables him to opine "on a subject outside the realm of common knowledge." *Id.* at *4 (quoting *Hawkins*, 2009 WL 30255, at *4). Because the officer's opinion regarding the complainant's bruises "drew on the experience that he had gleaned from investigating hundreds of domestic crimes, not on a scientific theory," we held that it was admissible as lay testimony. *Id.* at *5.

The same is true here. In each of the three challenged excerpts related to victim behaviors, Detective Chevallier opined on what his firsthand experience had shown to be usual or unusual. As in *Smith*, Detective Chevallier formulated his opinions by drawing on his years of experience handling and investigating family-violence cases—not by relying on a specific scientific theory. *See id.* Therefore, Detective Chevallier could testify as a lay witness that delayed reporting, a lack of visible injuries, a private setting, and a lack of video evidence were all common in the family-violence cases he had seen. *See* Tex. R. Evid. 701. Whether or not the detective was timely designated or qualified to testify as an expert, the trial court did not abuse its discretion by admitting this testimony.

We overrule this portion of Zaff's appellate issue.

**B.  Motion for Continuance**

In his final argument, Zaff complains that the trial court denied his mid-trial continuance motion, in which he sought time to obtain a defense expert who could

12

rebut Detective Chevallier's allegedly unexpected expert testimony. But we have already held that the detective's challenged statements were admissible as lay testimony, so Zaff's continuance-related argument is moot.[8] *See* Tex. R. App. P. 47.1.

### III. Conclusion

Having overruled all subparts of Zaff's sole issue, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Elizabeth Kerr

Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 8, 2024

---

[8]Even if the issue were not moot, Zaff's continuance motion was not sworn. By statute, "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." Tex. Code Crim. Proc. Ann. art. 29.08; *see Venancio v. State*, Nos. 02-21-00147-CR, 02-21-00148-CR, 2022 WL 17687436, at *4 (Tex. App.—Fort Worth Dec. 15, 2022, no pet.) (mem. op., not designated for publication). An unsworn continuance motion "preserves nothing for appeal." *Venancio*, 2022 WL 17687436, at *4 (quoting *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012)); *see Coleman v. State*, No. 02-18-00471-CR, 2020 WL 241975, at *20 (Tex. App.—Fort Worth Jan. 16, 2020, no pet.) (mem. op., not designated for publication) (reiterating that "if a party makes an unsworn . . . motion for continuance before or during trial . . . , then the party forfeits the right to complain on appeal about the trial court's ruling").